IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHRISTOPHER M. HARRISON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-06-183-S-EJL |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| THOMAS J. BEAUCLAIR, Director, | ) | |
| Idaho Department of Correction,[1] | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This case was reassigned to this Court for lack of all parties' consent to the jurisdiction of a United States Magistrate Judge to issue final orders in this case. Pending before the Court is Respondent's Motion for Summary Judgment (Docket No. 12). Petitioner Christopher Harrison (Petitioner) has been sent the Notice to Pro Se Litigants of the Summary Judgment Rule Requirements (Docket No. 14). Petitioner has not filed a

---

[1] The current Director is Brent Reinke. Petitioner is an Idaho prisoner incarcerated in an out-of-state facility, and, thus, the Court has allowed him to name the Director as respondent, rather than the warden of the facility where he is held.

MEMORANDUM ORDER 1

response even though the Motion has been pending for nearly a year, and the deadline for doing so has now passed. Accordingly, the Court shall determine the Motion on the record before it, including the state court record.

## BACKGROUND

On May 31, 2000, Petitioner was convicted by jury of attempted robbery and use of a firearm in the Fourth Judicial District Court, in Ada County, Idaho. He was sentenced to a prison term of fifteen years fixed, with fifteen years indeterminate. Petitioner pursued a direct appeal and a post-conviction action in state court. He filed his federal Petition for Writ of Habeas Corpus on May 4, 2006, alleging that his trial counsel was ineffective for failing to call an alibi witness, Samuel Barber, to testify at trial. Respondent now asserts he is entitled to summary judgment on Petitioner's claim.

## MOTION FOR SUMMARY JUDGMENT

**A.     Standard of Law**

    1.     <u>The Antiterrorism and Effective Death Penalty Act</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. In general, summary judgment is not inconsistent with established habeas practice and procedure. *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). However,

MEMORANDUM ORDER  2

the summary judgment standards must be applied in light of the substantive law governing habeas proceedings.

The Petition in this case is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), which was enacted in 1996.  The AEDPA established a deferential standard of review that a federal habeas court must apply to a state court's resolution of constitutional claims.  Under AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application" of federal law when the court was "unreasonable in applying the governing legal principle to the facts of the case."  *Id*. at 413.  A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect; instead, the decision must be "objectively unreasonable."  *Bell v. Cone*, 535

MEMORANDUM ORDER  3

U.S. 685, 694 (2002).  Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent.  *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Under AEDPA, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  As a result, a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2).

2.  Clearly Established Federal Law

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set out the proper test to be applied to claims alleging constitutionally inadequate representation.  To succeed on such a claim, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby.  *Id*. at 684.  Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id*. at 684, 694.

A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, and every effort must be made to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. If counsel has conducted a reasonable investigation, or decided that a particular investigation was unnecessary based upon the exercise of reasonable professional judgment, then counsel's subsequent tactical decisions will be "virtually unchallengeable." *Id*. at 689-91. The pertinent inquiry "is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

**B.     Discussion**

Petitioner was charged with attempted robbery in the Vista Village shopping center in Boise, Idaho. The victim, Connie Barger (Barger), testified that as she left work, between 7:15 and 7:30 p.m., she was approached by a man, who pointed a gun in her face and demanded her purse. When she screamed, a bystander came to her assistance, and the assailant fled. Barger quickly returned to her office and called 911. Police arrived about a minute later. Barger described the man as six feet tall, slender,

MEMORANDUM ORDER  5

with long blonde/brown hair, wearing a shirt with a rib collar, a button-up shirt over that, and a jacket over that. *State's Exhibit C-1*, at pp. 139-40.

Shortly after the attempted robbery, police found Petitioner on the roof of the shopping center. They found his gun hidden in a roof drain. Petitioner matched the description of the suspect. *Id*. at p. 140. He was arrested and charged.

Prior to the attempted robbery, Petitioner had been at the home of his friend Sam Barber (Sam), located close to the Vista Village shopping center. Petitioner tried to sell Sam a gun because Petitioner needed money, but Sam did not have any money to buy the gun. At Petitioner's post-conviction hearing, Sam testified that he left his house at about 7:20 or 7:30, when his dad picked him up. As Sam left, he saw Petitioner walking toward Robert Street, which runs directly behind the shopping center.

Petitioner asserts that his counsel should have called Sam at trial to show he had an alibi and could not have committed the crime. Petitioner testified at trial that he and Sam had seen and discussed the police activity at the shopping center, and that Petitioner had later climbed up onto the roof of the shopping center "to stay out of sight" because he "was under the impression" that there was a warrant out for his arrest for a probation violation. *State's Exhibit A-2*, at pp. 507-08.

At the evidentiary hearing, Petitioner's trial counsel testified that he had been aware of Sam as a potential alibi witness and had interviewed him. He stated that he could not recall the exact reason he did not call Sam at trial, but that his decision had been a matter of trial strategy. *State's Exhibit D-1*, at pp. 42-43.

MEMORANDUM ORDER  6

After the hearing, the state district court rejected Petitioner's claim.  On appeal, the Idaho Court of Appeals affirmed.  Petitioner did not file a petition for review with the Idaho Supreme Court, and thus the opinion of the Idaho Court of Appeals is the decision this Court reviews in this habeas corpus action.  *See State's Exhibits C-1 through D-10*.

After identifying the correct standard of law, the Court of Appeals reasoned:

> The district court found that the friend's testimony reaffirmed Harrison's need for money and his possession of a gun just prior to the attempted robbery.  The district court also noted that the friend's testimony at the evidentiary hearing did not corroborate Harrison's trial testimony that Harrison had observed police presence in the area prior to his friend's departure to the basketball game.  The district court found that this discrepancy could have led the jury to believe that Harrison was lying about the reason he climbed onto the roof.  The district court indicated that Harrison's counsel had interviewed the friend and decided that his testimony would not be helpful.  The district court therefore concluded that Harrison failed to meet his burden of proving that his counsel's representation fell below an objective standard of reasonableness.
>
> Harrison contends that his friend's testimony could not have harmed him because he had already testified that he was present near the scene of the crime with a gun in his possession.  Harrison urges that his friend's testimony was necessary to substantiate Harrison's proffered reason for being on the roof with the gun.  Harrison argues that there was no strategic reason for trial counsel to not utilize the friend as an alibi witness and, therefore, his failure to do so must have been the result of inadequate preparation or some other shortcoming capable of objective evaluation.
>
> In assessing the reasonableness of attorney performance, judicial scrutiny must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Laughlin v. State*, 139 Idaho 726, 728, 85 P.3d 1125, 1127 (Ct. App. 2003).  We recognize the strong presumption that Harrison's trial counsel rendered adequate assistance and that his decision to not utilize the friend as a witness was made in the exercise of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690; *Laughlin*, 139 Idaho at 728, 85 P.2d at 1127.  Although Harrison's argument outlines why calling the friend

MEMORANDUM ORDER  7

> as an alibi witness might have been sound trial strategy, it does not foreclose the possibility that the decision not to call the friend was also a sound strategy.
>
> The friend's testimony was entirely compatible with the prosecution's theory that Harrison attempted the robbery after leaving his friend's house. Trial counsel interviewed the friend and decided not to utilize him as a witness at trial. We will not second-guess the correctness of that decision on appeal.

*State's Exhibit D-6*, at p. 5.

As set forth above, the *Strickland* Court emphasized that when an attorney has conducted a reasonable investigation, his fully informed tactical decisions are "virtually unchallengeable." 466 U.S. at 689-91. In such circumstances, the Court asks "not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs*, 133 F.3d at 736.

Sam testified at the post-conviction hearing that no one from the public defender's officer ever contacted him about Petitioner's case. *State's Exhibit D-1*, at p.20. Amil Myshin, the public defender, testified that he had spoken to Sam and decided not to use his testimony for tactical reasons. *Id*. at p. 42-43. Myshin pointed to a note he had written about his conference with Sam. Myshin also recalled that he had driven out to the house himself, had experienced trouble finding the house, and that there had been ivy on the porch of the small house. *Id*. at 44-45. The trial court found that Myshin interviewed Sam and made a tactical choice not to use him as a witness. *State's Exhibit C-1*, at 142. Petitioner has brought forward nothing showing that this finding was unreasonable based upon the record, and, therefore, the Court is required to presume that it is correct.

MEMORANDUM ORDER  8

Here, Petitioner has shown neither deficient performance nor prejudice to his defense. Defense counsel interviewed and decided not to call the witness. That decision was reasonable as described in the Court of Appeals' analysis of the pros and cons of calling Sam as an alibi witness. Respondent points out that, in addition to the cons discussed above, had Petitioner's counsel called Sam as a witness, the prosecutor could have pointed out his bias because he was a close friend of Petitioner and a credibility problem because he was a currently-incarcerated convicted felon.

In addition, Sam's testimony could have been devastating had he testified that he and Petitioner did *not* discuss the police activity at the shopping center. The transcript of the post-conviction hearing where Sam testified is notably devoid of any corroboration for this important part of Petitioner's story. *See State's Exhibit D-1*. Finally, because the evidence implicating Petitioner is overwhelming, no prejudice resulted from Petitioner's counsel's failure to call Sam as a trial witness.

Based upon all of the foregoing, the Court concludes that the Idaho Court of Appeals did not unreasonably apply the *Strickland* standards, nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). As a result, habeas corpus relief is unwarranted, and the Petition shall be dismissed with prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 12) is GRANTED. Petitioner's Petition is DISMISSED with prejudice.

DATED: **August 21, 2007**

*[Signature]*

~~Honor~~able Edward J. Lodge
U. S. District Judge